Mark Evans Lindquist, *Pro Hac Vice anticipated*
MARK LINDQUIST LAW PLLC
100 S. 9th Street
Tacoma, WA 98402
Telephone: (253) 861-8611
mark@marklindquistlaw.com

Matthew Clarke, OSB # 022758
KRUTCH LINDELL BINGHAM JONES, PS
5 Centerpointe Dr, Suite 400
Lake Oswego, OR 97035
Telephone: (503) 210-1987
mkc@krutchlindell.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AMBER CRAVEN, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN AIRLINES, INC., a corporation, SKYWEST AIRLINES, INC. d/b/a AMERICAN EAGLE, and JUSTIN ELDON KNOTTS, an individual, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES** <br><br><br> **JURY TRIAL DEMANDED** |

COMES NOW the Plaintiff, by and through her undersigned attorneys, and alleges as follows:

## PARTIES AND INTRODUCTION

1.      Plaintiff Amber Craven is now, and at all times material hereto has been, a citizen and resident of the State of Oregon.

Page 1 – COMPLAINT AND JURY DEMAND

2.      Plaintiff is alleging damages for a sexual assault she suffered while a passenger on an American Airlines flight. Plaintiff further alleges the passenger who assaulted her, Defendant Knotts, was allowed by the Airline Defendants' employees to board the plane and take a seat and remain on board while clearly intoxicated.

3.      At all times material hereto, Defendant American Airlines, Inc. ("American Airlines") was a Delaware corporation with its principal place of business in Dallas, Texas, and was present and did substantial and regular commercial aviation business in Multnomah County, Oregon, including operating daily commercial flights in and out of Portland International Airport.

4.      At all times material hereto, Defendant SkyWest Airlines, Inc. d/b/a American Eagle ("SkyWest") was a Utah corporation with its principal place of business in Utah, and was present and did substantial and regular commercial aviation business in Multnomah County, Oregon, including operating daily commercial flights in and out of Portland International Airport, and registered to conduct business in the State of Oregon, with its registered agent in Multnomah County, Oregon.

5.      SkyWest contracts with American Airlines to operate certain regional American flights under the name American Eagle, which flights are sold, ticketed, and marketed by American Airlines and held out and marketed as American Airlines flights.  At all material times, SkyWest acted in concert with, as an agent of, and under the control of, American Airlines, and defendants American Airlines and SkyWest are collectively referred to herein as "the Airline Defendants".

6.      Based on information and belief, Defendant Justin Eldon Knotts' last known address was in Alabama, and there is a warrant for his arrest issued in Dallas, Texas.

## JURISDICTION AND VENUE

7.      Diversity jurisdiction exists under 28 U.S.C. §1332 as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

Page 2 – COMPLAINT AND JURY DEMAND

8.      Venue is proper as Portland International Airport was where plaintiff's itinerary began and ended on a round-trip flight.

**FACTS**

9.      On or about December 10, 2024, Plaintiff was flying home to Portland from Missouri after a business trip. Plaintiff was vice-president of a property management firm based in Portland. She was flying on an American Airlines round-trip flight from Portland to Missouri and back to Portland via Dallas.

10.      Her flight was delayed in Missouri. There was one small bar and restaurant at the airport where many passengers waited. Plaintiff was speaking to a married couple. Near them was a man wearing a cowboy hat, later identified by law enforcement as Defendant Justin Eldon Knotts.

11.      Defendant Knotts told Plaintiff and the couple Plaintiff was sitting with about his career as a songwriter and shared gossip about the music business. During the dialogue, he ordered a beer and a shot, and then another beer, and another shot, and more. As he became increasingly intoxicated, he commented to Plaintiff that she was "sexy" and "beautiful."

12.      When the dialogue became uncomfortable for Plaintiff, she paid her tab and left. She asked the woman she had been talking with to keep an eye on the drunk guy and make sure he didn't follow her to the restroom or anything. He did not follow.

13.      After a boarding call, Defendant Knotts attempted to leave the bar without paying his tab, stumbling out toward the gate. When the waitress chased him down in the small airport, he gave her his credit card. The card, however, was declined. The husband of the woman Plaintiff had been talking with paid his tab. Passengers who observed Defendant Knotts thought he would not be allowed to board the plane, operated by the Airline Defendants, due to his obvious intoxication.

14.      Per Federal Aviation Rules, and company policies, gate agents and flight attendants

Page 3 – COMPLAINT AND JURY DEMAND

are required to look out for intoxicated passengers and not allow them to board the plane as intoxicated passengers can jeopardize the safety of fellow passengers and crew. Despite Knotts being obviously intoxicated, and smelling of alcohol, the gate agents allowed him to board the plane, operated by the Airline Defendants, and the flight attendants allowed him to take his seat.

15.     When Plaintiff boarded the plane and was about to sit in her assigned seat, she saw the drunk from the bar was sitting in the seat next to hers. Knotts started laughing as Plaintiff sat down. He said something like, "This is my lucky day." He smelled of alcohol and was slurring. Plaintiff said something like, "I'm going to listen to my music." She put on her headphones. Knotts was sitting next to the window. Plaintiff was in the aisle seat right next to him as there was no middle seat.

16.     Defendant Knotts began bumping and rubbing against Plaintiff, invading her space. She shifted away from him. As the plane was lining up on the runway for takeoff, he began touching her inappropriately. Plaintiff pushed his hand away, but Knotts continued to grope and forcibly sexually assault her as the plane accelerated down the runway despite, and forcibly resisting, Plaintiff's efforts to push him away and shield herself.

17.     Plaintiff turned and yelled for a flight attendant, saying something like, "Help, I need to move to a different seat." Initially the flight attendant said, "Ma'am, we're still in takeoff, you need to stay seated." Plaintiff yelled something like, "This man is completely on top of me and I need to move *now*!"

18.     When the flight attendant jumped out of her seat, she could see Defendant Knotts groping Plaintiff. He stopped only when the flight attendant approached. The flight attendant told Plaintiff to grab her belongings and whisked her to a seat about ten rows away.

19.     Plaintiff was distraught throughout the entire flight. The flight attendant checked in with her and said the Captain had reported the sexual assault and Dallas police officers were going

Page 4 – COMPLAINT AND JURY DEMAND

to be at the gate when they landed. The flight attendant also told Plaintiff that Defendant Knotts had touched her inappropriately during beverage service.

20.     When the plane landed, the other passengers remained seated when Plaintiff was walked out of the plane first so she could report the sexual assault to Dallas police officers. They were there to meet her. Plaintiff gave her statement.

21.     Defendant Knotts also spoke with police officers. Even after he had ample time to sober up on the flight, he was still obviously intoxicated. *"Knotts appeared unsteady on his feet, had difficulty maintaining his balance, and emitted a strong odor of alcoholic beverages as he spoke,"* according to a police report. Knotts initially denied drinking alcohol and denied assaulting Plaintiff. However, eventually he not only admitted drinking alcohol, but said he mixed the alcohol with his prescription drugs.

22.     One of the flight attendants also spoke with officers. She reported seeing Defendant Knotts grope Plaintiff and that she moved Plaintiff to a different seat after witnessing this sexual assault. Additionally, she reported Knotts assaulted her as well. According to the police report, she felt, *"Knotts' hand brush up against her thigh, grabbing her wrist and smacking her on the buttocks inflicting pain."*

23.     By the time the police were done with their initial investigation and interviews, Plaintiff had missed her connecting flight. She had to spend the night. Next day, she flew home to Portland.

24.     As a result of the sexual assault, Plaintiff suffered various injuries as described and to be described further in litigation. She has been in therapy and doctors have prescribed medications.

25.     Based on information Plaintiff received from an F.B.I. agent, Plaintiff believes Defendant Knotts was charged criminally and a warrant was issued for his arrest.

## FIRST CLAIM

### (Negligence – the Airline Defendants)

26.     Plaintiff realleges and incorporates by reference all preceding paragraphs in this complaint as if fully set forth herein.

27.     Plaintiff alleges a negligence claim against the Airline Defendants. The Airline Defendants had a duty of care, breached that duty, and proximately caused Plaintiff's damages.

28.     American Airlines and SkyWest are common carriers under Federal law and Oregon law. The Airline Defendants therefore have a non-delegable duty to use the highest degree of care to ensure the safety of its passengers.

29.     Federal Aviation Administration Regulations and the Airline Defendants' policies prohibit airlines from allowing intoxicated people to board the plane because intoxicated passengers pose a safety risk to fellow passengers and the crew.

30.     The Airline Defendants, by and through their employees, agents and servants, breached the non-delegable duty owed to Plaintiff and foreseeable harm resulted.

31.     Plaintiff sustained injuries as a direct and proximate result of the Airline Defendants' acts and omissions and failure to exercise the highest degree of care practicable.

32.     The Airline Defendants were negligent and failed to use ordinary care or reasonable care for the safety and protection of Plaintiff in all or more of the following ways:

a)   failing to properly train crew and other employees and agents;

b)   failing to implement or follow policies and procedures necessary to comport with FAA regulations;

c)   failing to implement or follow policies and procedures necessary for the safety of passengers;

d)   failing to stop a clearly intoxicated passenger from boarding the plane;

e)  failing to remove an intoxicated passenger from the plane before takeoff;

f)  failing to observe a clearly intoxicated passenger's drunkenness and assaultive conduct in a timely manner;

g)  failing to exercise ordinary care or reasonable care to protect the passengers from sexual assault or injury;

h)  failing to exercise ordinary care or reasonable care to protect the plaintiff from sexual assault or injury; and

i)  other failures or omissions constituting negligence.

33.    As a direct and proximate result of the incident described herein, and the errors and omissions of the Airline Defendants, Plaintiff has suffered extreme emotional distress, mental anguish, shock, embarrassment, anxiety, anguish, depression, difficulty sleeping, fear of flying, physical pain and suffering, loss of enjoyment of life, expense of medical care, and other personal injuries and damages to be described further in litigation.

## SECOND CLAIM

### (Assault – Defendant Knotts)

34.    Plaintiff realleges and incorporates by reference all preceding paragraphs in this complaint as if fully set forth herein.

35.    Defendant Knotts had a duty to act with reasonable care and not to injure others by any means, including unwanted touching, grabbing, and groping, as it is reasonably foreseeable that physical and emotional harm will result.

36.    Defendant Knotts breached that duty by becoming intoxicated and touching, grabbing, and groping Plaintiff's breasts, legs, and between her legs, in a sexual assault.

37.    Defendant Knotts's sexual assault of Plaintiff was a violation of applicable laws and a proximate cause of Plaintiff's injuries.

38.     As a direct and proximate result of Defendants Knotts' actions, and the Airline Defendants' negligence, Plaintiff has suffered extreme emotional distress, mental anguish, shock, embarrassment, anxiety, anguish, depression, difficulty sleeping, fear of flying, physical pain and suffering, loss of enjoyment of life, expense of medical care, and other personal injuries and damages to be described further in litigation.

## DAMAGES

39.     Plaintiff realleges and incorporates by reference all preceding paragraphs in this complaint as if fully set forth herein.

40.     Plaintiff has suffered in the past, continues to suffer presently, and will suffer in the future, damages which include but are not limited to the following: extreme emotional distress, mental anguish, shock, embarrassment, anxiety, anguish, depression, difficulty sleeping, fear of flying, physical pain and suffering, loss of enjoyment of life, expense of medical care, and further injuries and damages as will be proven at trial.

## RESERVATION

41.     Plaintiff's investigation is ongoing.

42.     Further, the exact nature and full extent of Plaintiff's injuries may not yet be fully known.

43.     Further the exact nature and full extent of Defendants' wrongful conduct and negligence may not yet be fully known.

44.     Therefore, Plaintiff may have additional claims or causes of action or allegations. To the extent allowed by law and the court, Plaintiff reserves the right to amend this complaint accordingly.

WHEREFORE, Plaintiff prays for judgment against Defendants, in amounts to be proven at trial, for damages as outlined above, and as follows:

Page 8 – COMPLAINT AND JURY DEMAND

a) For Plaintiff's general damages for pain, shock, emotional distress, embarrassment, anxiety, anguish, depression, loss of enjoyment of life, as set forth above, and any other injuries arising from the conduct of Defendants;

b) For all past, present and future special damages, including, but not limited to, all medical expenses, and all other recoverable special damages as may result from the injuries to Plaintiff alleged herein;

c) For all other general and special damages recoverable under Federal or Oregon State law, or any other applicable law or treaty;

d) For pre-judgment and post-judgment interest;

e) For all costs, including reasonable attorneys' fees, as allowed by federal and state law; and

f) For such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

Plaintiff hereby demands trial by jury of twelve (12) on all of the above counts.

DATED this 11th day of December, 2025.

KRUTCH LINDELL BINGHAM JONES, P.S.


 *s/ Matthew Clarke*
Matthew Clarke, OSB # 022758
KRUTCH LINDELL BINGHAM JONES P.S.
5 Centerpointe Drive Suite 400
Lake Oswego, OR 97035
Telephone: (503) 210-1987
mkc@krutchlindell.com


*s/ Mark Evans Lindquist*
Mark Evans Lindquist, *Pro Hac Vice anticipated*
MARK LINDQUIST LAW PLLC
100 S. 9th Street

Tacoma, WA 98402
Telephone: (253) 861-8611
Mark@MarkLindquistLaw.com

*Attorneys for Plaintiffs*