Mark Evans Lindquist, *Pro Hac Vice*
MARK LINDQUIST LAW PLLC
100 S. 9th Street
Tacoma, WA 98402
Telephone: (253) 861-8611
mark@marklindquistlaw.com

Matthew Clarke, OSB # 022758
KRUTCH LINDELL BINGHAM JONES, PS
5 Centerpointe Dr, Suite 400
Lake Oswego, OR 97035
Telephone: (503) 210-1987
mkc@krutchlindell.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| AMBER CRAVEN,<br><br>        Plaintiff,<br><br>        v.<br><br>AMERICAN AIRLINES, INC., a corporation, and SKYWEST AIRLINES, INC. d/b/a AMERICAN EAGLE,<br><br>        Defendants. | Case No. 3:25-cv-02301-MO<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING RE: 1) SPECIFIC JURISDICTION THIRD PRONG; and 2) OPPOSITION TO 1404(a) VENUE TRANSFER** |

Plaintiff, Amber Craven, by and through her undersigned attorneys, submits this Supplemental Briefing Regarding: 1) Specific Personal Jurisdiction's Third Prong; and 2) Opposition to 28 U.S.C. § 1404(a) Venue Transfer.

1.     <u>**Specific Jurisdiction's Third Prong:**</u> *American fails to make a compelling case that jurisdiction is unreasonable*

Under specific jurisdiction's third, or "reasonableness," prong, "the burden shifts to the defendant to present a compelling case that jurisdiction is unreasonable." *Doe v. Deutsche*

Page 1 – PLAINTIFF'S SUPPLEMENTAL BRIEFING

*Lufthansa*, 157 F.4th 1103, 1113 (9th Cir. 2025) ("*Deutsche Lufthansa*") (quotation and citationon omitted).  American cannot meet their burden.  "To analyze the reasonableness of asserting personal jurisdiction, [the Ninth Circuit] weigh[s] seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

*Id.* (citing *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) and *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985)).

As addressed during oral argument, *Deutsche Lufthansa*, is remarkably on-point in virtually all material respects with this case as to personal jurisdiction over the commercial airline.[1] Plaintiff submits that the only material difference with respect to the reasonableness prong, is the fact that there were international considerations in *Deutsche Lufthansa,* as the defendant,

---

[1] *Deutsche Lufthansa* divides "arising out of or relates to" into three separate analyses/conclusions: 1) that the breach of contract claims both arose out of and related to Lufthansa's California activities (*id.* at 1112, 4th full para.); 2) that the tort claims *arose out of* the Lufthansa's California activities (*id.* at 1112, 5th full para.); and 3) that the tort claims, *additionally related to* Lufthansa's activity in California (*id.* at 1113, 1st para.).  Each of these were independent conclusions.  Only the conclusion that the tort claims *additionally related to* Lufthansa activity in California looked at the fact that some of the tortious acts or omissions arguably continued into California.  *Id.* at 1113, 1st para.  Whether any of the tortious conduct had arguably continued into California was immaterial to the court's conclusion that the tort claims *arose out of* Lufthansa's California activities, because that conclusion was expressly stated as based only on the fact that Lufthans's "contract for carriage is a but-for cause of the tort claims" as "[w]ithout the contract for carriage into California, Doe and Roe would not have needed to disclose their marital status to Lufthansa at all, and so the tortious conduct would not have occurred." *Id.* at 1112, 5th full para.  This is consistent with *Deutsche Lufthansa*'s earlier statement that "[a]lthough the tortious conduct primarily occurred in Saudi Arabia, we evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Id.* at 1111 (quotation and citations omitted).  In other words, the forum conduct which establishes "but for" causation for purposes of "arising out of" does not have to be the defendant's specific tortious acts to which liability attaches.

Page 2 – PLAINTIFF'S SUPPLEMENTAL BRIEFING

Lufthansa, is a German commercial airliner, and the tortious conduct primarily took place outside in a foreign country (Saudi Arabia).  Where the Ninth Circuit concluded jurisdiction over Lufthansa in California was not unreasonable in *Deutsche Lufthansa*, the non-international circumstances here should only bolster the conclusion that jurisdiction is likewise reasonable in *this* matter.

Here, following and applying the seven factors in the way the Ninth Circuit did in *Deutsch Lufthansa* should lead to the same conclusion – the exercise of specific jurisdiction is reasonable.

**First factor**.  *Deutsche Lufthansa* concluded "[t]he first factor, "purposeful interjection," weighs in favor of jurisdiction, because the defendants purposefully availed themselves of the privilege of doing business in California. *See Silk v. Bond*, 65 F.4th 445, 458 (9th Cir. 2023) (holding that the "purposeful interjection" factor is met when the purposeful availment prong is met)." *Id.* at 1113.  The court concluded Lufthansa had purposefully availed itself of the privilege of doing business in California because it contracted to fly plaintiffs to California, regularly operates flights in and out of California, and has a permanent presence and employees at California airports, and has an agent for service of process in California.  *Id.* at 1111.

These same considerations are all present with respect to American Airlines and Oregon here.  Accordingly, the first factor weighs in favor of jurisdiction here for the same reasons it did in *Deutsche Lufthansa*.

American's argument to the contrary relies on distracting statistics comparing American's Oregon operations to American's overall corporate operations as a major commercial airline.  Such a comparative analysis regarding where a corporation's most significant overall operations are located may be appropriate for general jurisdiction, but is not what matters with respect to the

reasonableness prong of specific jurisdiction.  American's argument is contrary to the Ninth Circuit's analysis of the first factor in *Deutsche Lufthansa*.[2]

**Second factor**.  *Deutsche Lufthansa* concluded "[t]he second factor, the burden on the defendants, is neutral.  Although Lufthansa is a foreign corporation, it has an agent and office in California, and we have noted that "modern advances in communications and transportation have significantly reduced the burden of litigating in another country."  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).  Although Lufthansa may prefer to litigate in Germany, it is no great burden for it to litigate in California."  *Id.* at 1113.

There are no material differences here with respect to Texas commercial airliner, American Airlines, that should lead to a any different conclusion with respect to litigation in Oregon, where American has an agent and a permanent physical presence, operations, and employees. Following  *Deutsche Lufthansa*, the second factor should be regarded as neutral here.

**Third factor**.  *Deutsche Lufthansa* concluded "the third factor, the extent of conflict with the sovereignty of the defendants' state, likely weighs against jurisdiction."  *Id.*  The court reached this conclcusion considering the sovereignty of the "foreign nation" where the tortious conduct occurred, which was Saudi Arabia.  *Id.* at 1113-14.

This case does not involve any foreign nations.  "Although sovereignty interests may carry significant weight when jurisdiction is asserted over a defendant from a foreign country, the importance of this factor with respect to state sovereignty is minimal in light of the Supreme Court's indication that the personal jurisdiction requirement is a function of the individual liberty interest protected by the due process clause rather than federalism concerns. *Insurance*

---

[2] As a German commercial airliner, Lufthansa's California operations would similarly be a small percentage of Lufthansa's overall corporate operations.  However, that is not what is important for determining purposeful interjection with respect to specific jurisdiction.

*Corporation of Ireland v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 702–03 n. 10, 102 S.Ct. 2099, 2104, (1982)." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841 (9th Cir. 1986) (citation omitted).

Plaintiff submits that this factor should, for this reason, be considered neutral here. However, even if this factor is regarded as weighing against jurisdiction as it was in *Deutsche Lufthansa*, the overall result of the seven factors, just as in *Deutsche Lufthansa*, is that there is no compelling case that jurisdiction over American Airlines is unreasonable, as addressed further below.

**Fourth factor**. *Deutsche Lufthansa* concluded "[t]he fourth factor, the forum state's interest in adjudicating the dispute, weighs in favor of jurisdiction because California maintains a strong interest in providing an effective means of redress for its residents tortiously injured, like Doe." *Id.* at 1114 (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)).

Applying the same reasoning here, the fourth factor weighs heavily in favor of jurisdiction because Oregon maintains a strong interest in providing an effective means of redress for its residents tortiously injured, like Ms. Craven who was sexually assaulted. *See Haruda v. Moulton*, No. 6:15-CV-00719-AA, 2015 WL 13387592, at *4 (D. Or. Sept. 16, 2015) ("Oregon has a strong interest in this dispute, as one of its residents allegedly has been injured.") (citing *Panavision*); *Alternative Legal Sols., Inc. v. Ferman Mgmt. Servs., Corp.*, No. CIV. 07-880-ST, 2008 WL 65584, at *9 (D. Or. Jan. 4, 2008) ("Oregon has 'a strong interest in providing an effective means of redress for its residents tortiously injured.' *Panavision Int'l L.P. v. Toeppen,* 141 F3d 1316, 1323 (9th Cir. 1998). Thus, this factor also weighs heavily in favor of exercising jurisdiction . . . .").

**Fifth factor**. *Deutsche Lufthansa* concluded "[t]he fifth factor, the most efficient judicial resolution of the controversy, weighs slightly against jurisdiction", noting the fifth "'factor focuses

Page 5 – PLAINTIFF'S SUPPLEMENTAL BRIEFING

on the location of the evidence and witnesses [and] is no longer weighed heavily given the modern advances in communication and transportation.'" 157 F.4th at 1114 (quoting *Panavision*, 141 F.3d at 1323).[3] "While many of the witnesses and evidence are in Saudi Arabia, this does not weigh heavily against jurisdiction, because those witnesses can either fly to California or be interviewed remotely, and discovery would in any event be largely electronic." *Id.*

The same should apply here for the same reasons – the fifth factor weighs only slightly against jurisdiction. If anything, the fifth factor should be given even less weight here because the witnesses and evidence are all within the United States, and international travel, distances, borders, and sovereignties are not involved.

**Sixth factor**. *Deutsche Lufthansa* concluded "[t]he sixth factor, the importance of the forum to the plaintiffs, weighs in favor of jurisdiction. The possible alternative fora, Germany and Saudi Arabia, are both abroad. Roe lives in the United States and does not have an American passport, so he would have to travel to either alternative forum on his Saudi passport, which could be taken from him at any time." *Id.*

Here, the importance of this Oregon forum to plaintiff Craven likewise weighs in favor of jurisdiction. Ms. Craven was sexually assaulted while travelling on a commercial airline, and suffers the associated trauma and distress from her experience. Moving this case to Texas, Missouri, or anywhere much farther than plaintiff Craven's home state of Oregon would force Ms. Craven to fly commercially again in order to attend trial, which would force her to vulnerably sit in close quarters with strangers, uneccessarily enduring the associated trauma and distress, and

---

[3] *See also Silk v. Bond*, 65 F.4th 445, 459 (9th Cir. 2023) ("this factor is no longer weighed heavily given the modern advances in communication and transportation.") (punctuation and citation omitted).

adding to her victimization.  Instead, she has a perfectly good forum available here in her home state.  The importance of this home forum to Ms. Craven is closely associated with the nature of the harm she indisputably suffered, as was the home forum for Roe in *Deutsche Lufthansa.*  Even American Airlines concedes "[t]his factor favors Plaintiff because she resides in Oregon."  Dkt. 33, p. 5.

**Seventh factor.**  For the seventh factor, availability of an alternative forum, *Deutsche Lufthansa* concluded "Doe and Roe have not shown how Germany, Lufthansa's state of incorporation, is unavailable to litigate this case, so we chalk this one up for the defendants."  *Id.* (punctuation and citation omitted).  Here too, for purposes of following the analysis in *Deutsche Lufthansa*, chalk this one up for American—alternative forums are available.[4]

**Adding up the seven factors**.  *Deutsche Lufthansa* summarized its analysis of the seven factors, with three in favor of jurisdiction, three weighing against, and one neutral, and concluded Lufthansa had failed to present a compelling case that jurisdiction in California was unreasonable:

> In sum, three factors weigh in favor of jurisdiction (purposeful interjection, the forum state's interest, and the importance of the forum to the plaintiffs), three weigh against (conflict with the sovereignty of another state, efficient judicial resolution, and availability of an alternate forum), and one is neutral (burden on the defendants). This lineup does not add up to a "compelling case" against jurisdiction where, as here, many of the factors that weigh against jurisdiction do so only slightly.

*Id.*

The same should apply here.  The facts are remarkably similar in all material respects as to the reasonableness prong and should result in the same balance of factors, as addressed above.  If

---

[4] However, the Ninth Circuit has noted "whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable . . . ."  *Silk v. Bond*, 65 F.4th 445, 459 (9th Cir. 2023) (punctuation and citations omitted).  American makes no such showing that Oregon is unreasonable here, so the seventh factor should not really come into play.

anything, two of the factors weighing against jurisdiction in *Deutsche Lufthansa*—conflict with sovereignty and efficient judicial resolution—should be afforded less weight here, given the lack of a non-U.S. defendant, non-U.S. event, or international sovereignty considerations.

American cannot meet its burden of a 'compelling case' against jurisdiction.

**Reasonableness, fairness, foreseeability.**  Stepping back from the specific seven factors, the reasonableness prong is broadly a question of whether it is unreasonable, unfair, or unforeseeable, to exercise jurisdiction over a defendant with respect to a particular action.

So it makes sense that in *Deutsche Lufthansa*, after going through the seven factors and concluding they did not present a compelling case against jurisdiction, the Ninth Circuit also addressed the broader conclusion that the exercise of jurisdiction would not be unfair under the circumstances of that case:

> Ultimately, the personal jurisdiction analysis is rooted in concerns about defendants' due process rights. *See, e.g., Bristol-Myers*, 582 U.S. at 261, 137 S.Ct. 1773.  Given the defendants' extensive contacts with California, and the connection of those contacts to the suit here, we cannot say that their due process rights would be violated by the exercise of personal jurisdiction. *See Ford*, 592 U.S. at 367, 141 S.Ct. 1017 (holding that the defendant was subject to personal jurisdiction because "allowing jurisdiction ... treats [the defendant] fairly").

*Id.*

In *Decker Coal, supra*, 805 F.2d at 840, the Ninth Circuit connected the seven factors to foreseeability, explaining that the seven factors "together determine whether under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum." (quotation and citation omitted).

In *Ford*, the Supreme Court did not even look at the seven factors, and instead addressed the reasonableness prong in connection with the concepts of fairness and foreseeability coupled with principles of interstate federalism.  592 U.S. at 367–68.  The Court found the business Ford conducted in the forum states and Ford's enjoyment of the benefits and protections of the forum

Page 8 – PLAINTIFF'S SUPPLEMENTAL BRIEFING

states' laws "creates reciprocal obligations" that Ford's cars "be safe" such that it "can hardly be said to be undue" for the forum states to enforce Ford's reciprocal obligation. *Id.* (quotation marks and citation omitted).

The Court concluded litigation in the forums was foreseeable despite the fact that none of Ford's tortious acts or omissions took place in the forums, because "[a]n automaker regularly marketing a vehicle in a State . . . has clear notice that it will be subject to jurisdiction in the State's courts when the product malfunctions there." *Id.* at 368 (quotation marks and citation omitted). With respect to "principles of interstate federalism", the Court emphasized the interest of the forum states in providing their residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Id.*

Here, the exercise of jurisdiction over American Airlines is entirely reasonable, fair, and foreseeable. American contracted to fly the plaintiff to Oregon, her home. American maintains substantial continuous and permanent operations, with employees, at a commercial airport (PDX) in Oregon, and is registered to conduct business in Oregon. American Airlines therefore enjoys the benefits and protections of Oregon law, which creates a reciprocal obligation for the safety of Oregon residents with which American contracts to take from Oregon to a destination, or from a destination back home to Oregon.

Ms. Craven suffered a sexual assault while traveling under American's contract to bring her back home to Oregon. Litigation in Oregon arising from American's negligence while carrying out a contract to bring an Oregon resident back home is entirely foreseeable.[5] As noted above,

---

[5] *See Tavantzis v. Am. Airlines, Inc.,* No. 23-CV-05607-BLF, 2024 WL 5446322, at *6 (N.D. Cal. July 19, 2024) ("Defendant should have reasonably anticipated that it may be haled into court in the state of departure and arrival for injuries that occurred during the operation of the trip."); *Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554, 561 (M.D.N.C. 2015) ("Delta should

Oregon has a recognized interest in providing redress for its residents tortiously injured, especially in the case of a serious offense such as a sexual assault.

Jurisdiction over American Airlines in this matter is consistent with due process, comports with fair play and substantial justice, and is fair and reasonable.

**2.       Opposition to 1404(a) Venue Transfer**

**Deference to plaintiff's chosen home forum and Oregon's strong interest and connection to this matter**

"The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, *supra*, 805 F.2d at 843 (citation omitted).  "The standard to defeat the plaintiff's chosen forum is high: a defendant must make 'a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or non-existent.'"  *Williams v. Lincoln Nat. Life Ins. Co.*, 121 F. Supp. 3d 1025, 1035 (D. Or. 2015) (Mosman, J.) (quoting *Dole Food Co. v. Watts,* 303 F.3d 1104, 1118 (9th Cir.2002)).

Here, plaintiff victim Ms. Craven's choice of her home forum, Oregon, is entitled to deference, and Oregon has a strong interest and connection to this matter, as the above balancing of specific jurisdiction's reasonableness factors, and plaintiff's briefing and arguments made in support of specific jurisdiction, as well as application of the Ninth Circuit's reasoning in *Deutsche Lufthansa*, all make clear.

---

have anticipated that, as a common carrier promising to pick Broadus up in North Carolina and return her there, it could be haled into a court in North Carolina, the state of her initial departure and final arrival, for injuries it inflicted on her during the trip."); *Covington v. Am. Airlines, Inc.*, No. CV MJM-22-725, 2023 WL 2648782, at *4 (D. Md. Mar. 27, 2023) ("Plaintiff purchased airline tickets from Defendant in Maryland and entered a contract obligating Defendant to provide a round trip beginning and ending in Maryland. As such, Defendant should have reasonably anticipated being haled into court in Maryland.")

Ms. Craven is an Oregon resident. She was in Missouri on a business trip. She contracted with American Airlines to bring her home because American Airlines has substantial and permanent commercial flight operations and presence, with employees, at PDX airport in Oregon. As a result of American Airlines' negligence, she was sexually assaulted on the first leg of her contracted-for trip back home to Oregon by an intoxicated passenger whom American allowed to board the flight, contrary to Federal Aviation Administration rules, and sit next to her.

*Deutsche Lufthansa* instructs that her claims against American thus arise out of American's contacts with Oregon. 157 F.4th at 1112. Further, the balancing of reasonableness factors in *Deutsche Lufthansa* supports: Oregon having a strong interest adjudictating this dispute and being the forum in which Ms. Craven seeks redress; Oregon being an important forum for Ms. Craven; and, that American Airlines purposefully interjected itself into Oregon.

Under the Supreme Court's reasoning in *Ford*, American Airlines' purposeful interjection in Oregon, and its substantial, continuous, and permanent presence and commercial air operations in Oregon, enjoying the benefits and protections of Oregon law, creates the reciprocal obligation for the safety of Oregon residents with which American contracts to take from Oregon to a destination, or from a destination back home to Oregon. This case directly involves, implicates, and arises out of those reciprocal obligations, giving Oregon a significant interest.

Oregon clearly has a strong connection to Oregon resident Ms. Craven's claims in this transitory tort action, and a strong interest in providing her a forum for adjudication of this matter and redress for her injuries from a sexual assault. Accordingly, Ms. Craven should be accorded full deference to her chosen home forum, and Oregon should be recognized as having significant interest in the adjudication of this matter, requiring a substantial showing—which American fails to make and cannot make—to be overcome by 1404(a) venue transfer here.

**Insufficient showing with respect to non-party witnesses to override the deference to plaintiff's choice of her home forum and Oregon's interest**

The strong showing of inconvenience required to upset Ms. Craven's choice of her home forum should require a fact-based showing that specific critical non-party witnesses would actually be unavailable in the District of Oregon, but would be available in the American Airlines-desired transferee district, the Northern District of Texas. Despite multiple opportunities to brief and support its 1404(a) motion to transfer to the Northern District of Texas (Dkt. 8, Alternative Motion to Transfer; Dkt. 16, Alternative Motion to Transfer; Dkt. 21 Reply; Dkt. 33, Supplemental Brief),[6] American Airlines has not provided any evidence that any particular witnesses will be unavailable in the District of Oregon, but available in the Northern District of Texas.

Instead, American Airlines in conclusory style has referred to the "natural location" for "witnesses" in this case, broadly deeming Texas "the more natural location." Dkt. 33, p. 8. This should not be enough, where Ms. Craven has made a clear showing that deference should be given to her choice of home forum in Oregon, where Oregon has a strong interest in providing her a forum for redress and a strong connection to her claims, which arise out of American Airlines' contacts with Oregon.

In *Perez v. Shippers Transp. Express, Inc.*, No. CV1304255BROPLAX, 2014 WL 12597141, at *3–4 (C.D. Cal. July 8, 2014), a district court in this circuit set forth the specificity and evidence of actual unavailability that should be required for a showing of witness inconvenience favoring transfer to a different requested federal district:

---

[6] Two of American's four 1404(a) briefing opportunities occurred after plaintiff's April 2, 2026 brief specifically calling out the fact that American Airlines had not presented any evidence of any witnesses actually being unavailable in Oregon, but available in the Northern District of Texas. Dkt. 19, p. 15. Despite all of its briefing opportunities, American—the party seeking transfer—has failed to present any evidence of actual witness unavailability, and has only addressed witness convenience with the broadest of conclusory strokes.

Page 12 – PLAINTIFF'S SUPPLEMENTAL BRIEFING

Nevertheless, Shippers has not attempted and failed to subpoena any witnesses for trial, nor has Shippers presented evidence that any witnesses would actually be unwilling to testify in trial in this Court. Courts assign this factor considerably less weight when "there has been no showing that important non-party witnesses would be 'unwilling' to testify at trial wherever it is held." *Raynes v. Davis*, CV 05-6740ABCCTX, 2007 WL 4145102, at \*4 (C.D. Cal. Nov. 19, 2007). In *Doody v. Penguin Group. (USA)*, for instance, the court rejected this same reasoning on the basis that, "Defendants' argument that three of the witnesses living in New York may be "unwilling witnesses" because they are former employees of Topaz' is based on pure speculation." CIV. 08-00285 JMSBMK, 2008 WL 4809470, at \*5 (D. Haw. Nov. 4, 2008). And courts outside this Circuit have similarly held that "the convenience of witnesses is considered only to the extent that the witnesses may actually be unavailable for trial in one of the fora. Without evidence to the contrary, courts assume that witnesses will voluntarily appear." *Mahoney v. Eli Lilly & Co.*, 545 F. Supp. 2d 123, 127 (D.D.C. 2008) (internal citations and quotation marks omitted); *accord Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (same); *Aloft Media, LLC v. Adobe Sys. Inc.*, CIV A 6:07-CV-355, 2008 WL 819956, at \*4–5 (E.D. Tex. Mar. 25, 2008) (finding the compulsory process unnecessary for witnesses for whom "there has not been a showing of particularized inconvenience or refusal to testify"); *Dobson Bros. Constr. Co. v. D.M. Dozers, Inc.*, 4:06CV3235, 2007 WL 258309, at \*4 (D. Neb. Jan. 25, 2007) (discounting this factor because "there is no evidence that any of the defendants' out-of-state witnesses would be unwilling to come voluntarily to the District of Nebraska" or that "these witnesses could not testify adequately via deposition").

While the convenience to the witnesses is ordinarily given substantial weight, where, as here, there is no evidence that the witnesses will not appear regardless of what court holds the trial, this factor is discounted accordingly. The Court therefore finds that this factor does not weigh substantially in favor of transfer.

Many federal courts have held similarly. *See e.g.*, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (witness convenience is considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora."); *Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F. Supp. 2d 696, 700 (D. Del. 2013) ("As the Third Circuit in *Jumara* implicitly recognized, litigation is an inconvenient exercise. Therefore, it is not whether witnesses are inconvenienced by litigation but, rather, whether witnesses 'actually may be unavailablefor trial in one of the for a' that is a determinative factor in the transfer analysis. *Jumara*, 55 F.3d at 879. . . . [Defendant] relies on nothing more than speculation to

suggest that any non-party witness might be critical enough to be called upon to testify at trial (and be unwilling to do so), this factor weighs against transfer.") (footnote omitted); *Sec. & Exch. Comm'n v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110, 117 (D.D.C. 2016) ("the convenience of the witnesses is only considered to the extent that the witnesses may actually be unavailable for trial in one of the fora.  Without evidence to the contrary, courts assume that witnesses will voluntarily appear.") (quotation marks and citations omitted); *Abbott v. Lockheed Martin Corp.*, No. 06-CV-0701-MJR, 2007 WL 844903, at *3 (S.D. Ill. Mar. 20, 2007) ("The convenience of the witnesses weighs heavily only to the extent that the witnesses may actually be unavailable for trial in one forum. *See, e. g., Heller Financial Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989). . . . Defendants must be able to point to specific witnesses who may be unavailable to testify in this court and to provide a general sense of why their testimony is material.  Defendants have not shown that the five witnesses they have identified as non-party witness may actually be unavailable or that they are unwilling to travel to Illinois voluntarily, making compulsory process unnecessary."); *Coast to Coast Health Care Servs., Inc. v. Meyerhoffer*, No. 2:10-CV-734, 2012 WL 169963, at *7 (S.D. Ohio Jan. 19, 2012) ("the defendants make no argument that witnesses may actually be unavailable for trial.")

Though *Perez* and the many other federal decisions applying the actual unavailability standard are not binding here, a required showing of actual unavailability is a reasonable standard that makes sense when purported witness convenience is being put forth as supporting overriding the strong deference given to a resident plaintiff's chosen forum, especially where the plaintiff is a sexual assault victim, assaulted while flying commercially, which would be required of her in the event of transfer to, and trial in, the Northern District of Texas.

Such a standard requiring an actual showing of a real problem with a specific witness, is consistent with the Ninth Circuit's statements regarding witness and evidence location in *Deutsche*

Page 14 – PLAINTIFF'S SUPPLEMENTAL BRIEFING

*Lufthansa*, as discussed earlier with respect to personal jurisdiction: "the location of the evidence and witnesses . . . is no longer weighed heavily given the modern advances in communication and transportation"; "[w]hile many of the witnesses and evidence are in Saudi Arabia, this does not weigh heavily against jurisdiction, because those witnesses can either fly to California or be interviewed remotely, and discovery would in any event be largely electronic." *Id.*

The actual unavailability standard—or at least a requirement to show claimed witness inconvenience with greater specificity than the broad, "natural location", conclusory statement American makes[7]—should apply here.

This is particularly the case since this is a transitory tort action by its very nature, and, aside from the question of whether any particular key witness here is actually unavailable in Oregon, but available in the Northern District of Texas, it is not even clear that the balance of important witnesses are actually *in* the Northern District of Texas anymore than in Oregon or any orther single state or federal district. Though she is a party, it is still important to keep in mind that the most important witnesss in this sexual assault case, the victim, is in Oregon.

The people at the airport bar who witnessed Knotts were at an airport in Missouri. Some of them may have been Missouri residents, but many of them, like Ms. Craven, could simply have been travelling and resided elsewhere. The particular flight leg on which Ms. Craven was sexually

---

[7] *See*, *e.g.*, *Aqua Fin., Inc. v. The Harvest King, Inc.*, No. 07-C-015-C, 2007 WL 2686838, at *3 (W.D. Wis. Sept. 11, 2007) {"defendants failed to submit any affidavits or other evidence indicating that they would be calling these witnesses. The moving party must 'clearly specify the key witnesses to be called' and submit 'affidavits, depositions, stipulations, or any other type of document containing facts tending to establish who (specifically) it planned to call or the materiality of that testimony.' *Generac Corp. v. Omni Energy Systems, Inc.,* 19 F.Supp.2d 917, 923 (E.D.Wis.1998) (quoting *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293-94 (7th Cir.1989)). Thus, I do not consider defendants' unsupported argument. I conclude defendant has failed to show that the convenience of the witnesses weighs in favor of transferring the case to Texas."

assaulted was a flight to American's hub, DFW.  Though DFW is in the Northern District of Texas, because American uses DFW *as a hub*, many passengers arriving at DFW on an American Airlines contract—just like Ms. Craven—are simply on the first leg of their overall journey, and do not reside in the Northern District of Texas but will merely "connect" at DFW to their second flight which will take them to their actual destination.

Accordingly, other passengers on the flight who witnessed Mr. Knotts's conduct could reside in numerous other states.  American Airlines has a passenger manifest which provides American (at least for now with no discovery or initial disclosures) with a monopoly on information regarding the other passengers on the flight and where they actually reside.[8]  Yet American has provided no information on where witnesses actually reside and no evidence that any critical witnesses are actually unavailable.

The only non-party witnesses known to likely reside in the Northern District of Texas are responding law enforcement officers when the plane landed at DFW.  However, there are police reports that can be stipulated to, video depositions that can be taken, and remote trial testimony is also possible.  Law enforcement officers regularly provide witness testimony, and are typically made available as necessary by their departments.  Importantly, there is no showing that any of these officers would be actually unavailable for trial in Oregon, or that alternative remote

---

[8] "Notwithstanding the federal regulations, courts have held that a passenger manifest may be discoverable pursuant to a confidentiality agreement." *Nathaniel v. American Airlines*, No. 2007/0033, 2008 WL 5046848, at *6 (D. Virgin Islands Nov. 20, 2008).  *See also*, *e.g.*, *Jakobot v. American Airlines, Inc.*, No. 10–CV–61576, 2011 WL 13214326, at *2 (S.D. Fla. May 23, 2011) (granting motion to compel production of passenger manifest); *Xuan Thi Phan v. JetBlue Airways Corp.*, No. 2:16-CV-2328 WBS DB, 2017 WL 6622707, at *1-2 (E.D. Cal. Dec. 28, 2017) (ordering the defendant airline "to provide plaintiff with the contact information for all passengers seated in plaintiff's row and continuing through the back of the plane.").

testimony arrangements could not be made. When there is further discovery, including production of the passenger manifest that is solely in American's possession right now, it could well be that such discovery will reveal that the balance of key witnesses in this transitory tort action actually reside outside the Northern District of Texas.

American seems to believe any non-Oregon witnesses categories it can broadly point to favor its request to transfer venue to the *Northern District of Texas* regardless of whether those witnesses actually reside in the Northern District of Texas. For example, American broadly points to categories of "Missouri airport and bar personnel," none of which are identified or shown to be actually unavailable, in support of its request for transfer to Texas. Such broad categories of unidentified possible *Missouri* witnesses do not support transfer to the Northern District of *Texas* because those witnesses do not reside in Texas either. *See Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008) (witnesses located in Kentucky, Alabama, and Texas do not support transfer from the Northern District of California to the District of Arizona even if "these locations might be closer to Phoenix than Oakland"; and, likewise, physical evidence being located in Kentucky does not support transfer to Arizonal just "because Kentucky is closer to Arizona than California.").

Whether any of American Airlines's flight crew resides in the Northern District of Texas should also not favor transfer to Texas. American's crew are American employees, and therefore, they should not be considered in the analysis of the convenience of non-party witnesses. *See Id.* ("The Court [] discounts any inconvenience to the parties' employees, whom the parties can compel to testify.")

American also points to the convenience of "the alleged assailant," Justin Knotts, but American provides no evidence Mr. Knotts is in Texas. In fact, Mr. Knotts could not be located

for service, which was attempted at an address *in Alabama*.  Dkt. 12.  Further, the "convenience" of the assailant in a sexual assault case should not weigh heavily with the court.

American additionally ignores the fact that damages witnesses for Ms. Craven who can testify to the impact of the sexual assault on her will be people she is close with and interacts with on a regular basis, and will be located in Oregon and seriously inconvenienced by a transfer to Texas or elsewhere.

American Airlines's broad brush conclusory claims that "Texas is the more natural location" for "witnesses" in this matter, with no actual showing of any specific witnesses who are unavailable in Oregon but available in the Northern District of Texas, fails to establish a level of witness inconvenience in this matter sufficiently weighty to overcome the strong deference that should be given to Ms. Craven's choice of her home forum, Oregon.

Accordingly, American Airlines' motion to transfer venue to the Northern District of Texas should be denied.  At the very least, and given all of the uncertainty regarding actual witnesses and where they reside in this transitory tort action, and given American's current monopoly on much of this key information not yet disclosed in discovery or American's motion, American's motion should be denied without prejudice to potentially raising later after time for discovery to reveal witnesses, where they reside, and whether any are actually available/unavailable in one venue versus another.

**Other considerations do not favor transfer**

American Airlines otherwise fails to show that other considerations so weigh in favor of transfer to the Northern District of Texas as to overcome the deference to Ms. Craven's chosen home forum, or Oregon's significant interest.

Ms. Craven does not dispute that the Northern District of Texas has some interest in this matter in that DFW police were involved when the flight landed in Texas.  However, the assault

Page 18 – PLAINTIFF'S SUPPLEMENTAL BRIEFING

itself occurred before Texas. Texas' interests are not sufficiently weighty to overcome the strong deference that should be given to Ms. Craven's chosen home forum in Oregon. Nor are Texas' interests as strong as Oregon's interests, which are more fully addressed above.

Missouri, and/or some other state the aircraft was flying over on the way to Texas, is where the sexual assault occurred in this transitory tort action. Because Ms. Craven was eventually separated from the perpeptrator, it is unlikely factual discovery concerning the timeline of events and the aircraft's flight path will support that any of the sexual assault occurred while flying over Texas, as opposed to Missouri, Oklahoma, or Arkansas. However, any interests of Missouri, Oklahoma, or Arkansas, cannot be chalked up as *Texas* interests or somehow favor a transfer—disturbing the deference to plaintiff's chosen forum—to the Northern District of Texas over Oregon.[9]

The Northern District of Texas may be more convenient for American Airlines than Oregon, but it is significantly inconvenient for Ms. Craven, who would be, as noted above, forced to endure commercial air travel in close quarters with strangers—the same circumstances in which she was sexually assaulted—in order for American to get its convenient hometown trial. "[T]ransfer is not appropriate merely to shift the inconvenience from one party to another." *Safarian v. Maserati N. Am., Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008). *See also*, *Unicru, Inc. v. Brenner*, No. CIV. 04-248-MO, 2004 WL 785276, at *13 (D. Or. Apr. 13, 2004) (Mosman, J.) ("While it will be inconvenient for defendants to litigate in Oregon, Unicru would experience inconvenience if it were required to litigate two separate lawsuits in different states. Thus the 'transfer would merely shift rather than eliminate the inconvenience.' *Decker*

---

[9] *See Getz*, *supra*, 547 F. Supp. 2d at 1084 (N.D. Cal. 2008) (witnesses or evidence being located in states that are not the requested transferee state do not somehow serve to support transfer to the requested transferee state).

Page 19 – PLAINTIFF'S SUPPLEMENTAL BRIEFING

*Coal Co.,* 805 F.2d at 843. As a result, the convenience-of-the-parties consideration does not favor transferring venue.").

Moreover, under the Ninth Circuit's reasoning in *Deutsche Lufthansa*, because American Airlines is a major commercial airline with an agent and permanent and substantial operations in Oregon, and with modern advances in communication and transportation, "it is no great burden for [American] to litigate in" Oregon. 157 F. 4th at 1113 ("burden on the defendants, is neutral. Although Lufthansa is a foreign corporation, it has an agent and office in California, and we have noted that modern advances in communications and transportation have significantly reduced the burden of litigating in another country. Although Lufthansa may prefer to litigate in Germany, it is no great burden for it to litigate in California.") (quotation marks and citation omitted).

With respect to access to evidence, first, concerns over access to documentary evidence should not weigh heavily in the transfer analysis. As discussed above, the Ninth Circuit in *Deutsche Lufthansa* concluded in the context of specific jurisdiction's reasonableness inquiry, "the location of the evidence and witnesses . . . is no longer weighed heavily given the modern advances in communication and transportation" and evidence located in Saudi Arabia did not weigh heavily against jurisdiction because "discovery would in any event be largely electronic." 157 F.4th at 1114 (quotation marks and citation omitted).

Second, American fails to identify any particular evidence that exists in Texas that is somehow inaccessible if venue remains in Oregon. Nor does American make any showing that evidence is not transmissible in electronic form. "When the evidence is in electronic form, this factor is neutral or carries minimal weight. *See, e.g., Sarinara v. DS Waters of Am. Inc.*, No. C–13–0905 EMC, 2013 WL 3456687 at *2 (N.D.Cal. July 9, 2013) ('ease of access to evidence is neutral, given the availability of digital records'); *Friends of Scot., Inc. v. Carroll,* No. C–12–1255 WHA, 2013 WL 1192956 at *3 (N.D.Cal. Mar. 22, 2013) ('with technological advances in

Page 20 – PLAINTIFF'S SUPPLEMENTAL BRIEFING

document storage and retrieval, transporting documents does not generally create a burden'). *Hansell v. TracFone Wireless, Inc.*, No. C-13-3440 EMC, 2013 WL 6155618, at *4 (N.D. Cal. Nov. 22, 2013). *See also*, *e.g.*, *Johnson v. UMG Recordings, Inc. by MCA Recs., Inc.*, No. 3:17-CV-01548, 2018 WL 4111912, at *8 (M.D. Tenn. Aug. 29, 2018) (giving little weight to the movant's argument that records are more available in the transferee forum and citing similar cases, including where the movant failed to "identify documentary evidence that would be unavailable or too bulky or difficult or transfer if the motion were denied" and where another court concluded "the existence of relevant documents in the receiving forum weighs little in light of current technology, which allows documents to be scanned and produced electronically.") (quotationd and citations omitted).

To the extent there are law enforcement records and reports in Texas, American makes no showing that they cannot be easily transferred electronically. In fact, plaintiff has already obtained the DFW law enforcement records, and American presumbably has as well. Law enforcement agencies regularly transmit their reports and records electronically to other law enforcement agencies, prosecutors, crime victim attorneys involved in civil litigation, and pursuant to public records requests. American Airlines fails to demonstrate how Texas records the parties already have and which are easily transmitted electronically should favor disturbing the deference given to plaintiff's chosen forum and transferring to the Northern District of Texas.

Accordingly, there is an insufficient showing of a balance of convenience factors so strongly favoring the Northern District of Texas as to overcome the deference that should be accorded to Ms. Craven's choice of her home forum in Oregon, and American's alternative motion to transfer venue under 28 U.S.C. § 1404(a) should be denied.

DATED this 12th day of August, 2026.

KRUTCH LINDELL BINGHAM JONES, P.S.

_s/ Matthew Clarke_
Matthew Clarke, OSB # 022758
KRUTCH LINDELL BINGHAM JONES P.S.
5 Centerpointe Drive Suite 400
Lake Oswego, OR 97035
Telephone: (503) 210-1987
mkc@krutchlindell.com


_s/ Mark Evans Lindquist_
Mark Evans Lindquist, _admitted Pro Hac Vice_
MARK LINDQUIST LAW PLLC
100 S. 9th Street
Tacoma, WA 98402
Telephone: (253) 861-8611
Mark@MarkLindquistLaw.com

_Attorneys for Plaintiffs_

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2026, I served or caused to be served a true and

complete copy of the foregoing document and any documents filed with it on the party or parties

listed below in the manner specified:

Tabitha M. Schneider
ROSEN & SCHNEIDER, LLC
1300 SW 5th Ave., Ste. 2850
Portland, OR 97201
schneider@rosenandschneider.com
*Attorney for Defendant American Airlines*

Aaron Bigby
NORTHCRAFT BIGBY DANIELS PC
2420 4th Ave. S. Unit 24086
Seattle, WA 98134
Aaron_bigby@northcraft.com
*Attorney for Skywest Airlines, Inc. d/b/a American Eagle*

☒    Via the Court's Efiling System
☒    by email to the email addresses listed above
☐    by first class mail to the addresses listed above

> KRUTCH LINDELL BINGHAM JONES, P.S.
>
> *s/ Matthew Clarke*
> Matthew Clarke, OSB # 022758
> KRUTCH LINDELL BINGHAM JONES P.S.
> 5 Centerpointe Drive Suite 400
> Lake Oswego, OR 97035
> Telephone: (503) 210-1987
> mkc@krutchlindell.com

Page 23 – PLAINTIFF'S SUPPLEMENTAL BRIEFING