IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**AMBER CRAVEN,**

Plaintiff,

v.

**AMERICAN AIRLINES, INC., a corporation, SKYWEST AIRLINES, INC., doing business as American Eagle,**

Defendants.

No. 3:25-cv-02301-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff Amber Craven ("Plaintiff") filed this lawsuit against American Airlines, Inc. ("American") and Skywest Airlines, Inc. after another passenger assaulted her on an American flight. This matter comes before me on American's Motion [ECF 16] to dismiss it for lack of personal jurisdiction or, in the alternative, to transfer this action to the United States District Court for the Northern District of Texas under 28 U.S.C § 1404. I heard oral argument on American's Motion on July 8, 2026, and ordered the parties to submit supplemental briefing on the third prong of the specific jurisdiction analysis and on American's alternative Motion to transfer this matter to the Northern District of Texas. Minute Order, [ECF 28]. The parties' supplemental briefing is complete, and for the reasons explained below, I deny American's Motion to dismiss it from this matter for lack of personal jurisdiction but grant its alternative Motion to transfer this case.

## BACKGROUND

Plaintiff is an Oregon resident. Am. Compl., [ECF 14] at ¶ 1. American is a Delaware Corporation with its principal place of business in Dallas, Texas. *Id.* at ¶ 3. American conducts commercial aviation business in Oregon, including operating daily commercial flights in and out of Portland International Airport, leasing "substantial gate space" at the airport, and maintaining a physical presence at the airport through its employees. *Id.* American is also registered to conduct business in Oregon. *Id.* Plaintiff would not have flown on American but for its "presence and operations in Oregon." *Id.* at ¶ 9.

Plaintiff booked a round-trip flight through Expedia from Portland, Oregon to Springfield, Missouri. *Id.* at ¶ 8. Her departing flight was on United Airlines, and her return flight from Missouri to Portland was on American, with a layover at the Dallas-Fort Worth International Airport. *Id.*

Plaintiff's return flight was delayed in Missouri. *Id.* at ¶ 10. Plaintiff and other passengers waited at the airport's small restaurant and bar. *Id.* A man, later identified by law enforcement as Justin Eldon Knotts, began speaking to a group that included Plaintiff. *Id.* Knotts became increasingly intoxicated and made Plaintiff uncomfortable with his comments that she was "sexy" and "beautiful." *Id.* at ¶ 11. "When the dialogue became uncomfortable for Plaintiff, she paid her tab and left." *Id.* at ¶ 12. Knotts was visibly intoxicated and smelled of alcohol at the gate. *Id.* at ¶¶ 13, 14. Other passengers at the Missouri airport who saw Knotts "thought he would not be allowed to board the plane" because he was obviously drunk. *Id.* at ¶ 13. The gate agents and flight crew, however, allowed him to board. *Id.* at ¶ 14.

When Plaintiff boarded the plane, she discovered that her assigned aisle seat was next to Knotts's window seat. *Id.* at ¶ 15. Almost immediately after she sat down, Knotts began invading Plaintiff's space. *Id.* at ¶ 16. As the plane accelerated down the runway for takeoff, Knotts groped

and "forcibly sexually assaulted" Plaintiff, "despite, and forcibly resisting, [her] efforts to push him away and shield herself." *Id.* Plaintiff managed to get a flight attendant's attention, and the flight attendant saw Knotts groping Plaintiff. *Id.* at ¶ 18. The flight attendant assisted Plaintiff in moving to another seat on the plane. *Id.* The flight attendant checked in with Plaintiff and told her that "Dallas police officers were going to be at the gate when they landed" and that Knotts had touched the flight attendant "inappropriately during beverage service." *Id.* at ¶ 19.

When the plane landed, Plaintiff, Knotts, and the flight attendant all spoke with police officers who were investigating Knotts's behavior. *Id.* at ¶¶ 20–23. By the time the investigation concluded, Plaintiff had missed her connecting flight to Portland. *Id.* at ¶ 23. She spent the night in Dallas and flew home to Portland the next day. *Id.*

Plaintiff's Amended Complaint sues American and Skywest Airlines, Inc. for negligence. *See generally*, [ECF 14]. American moves to dismiss the action against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and (3) and lack of venue under 28 U.S.C § 1391(b). [ECF 16]. In the alternative, American moves to transfer this action to the United States District Court for the Northern District of Texas. *Id.*

## DISCUSSION

### I. Personal Jurisdiction

"In exercising personal jurisdiction, a federal district court is constrained by the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in which it sits." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023). Oregon's long-arm statute, ORCP 4L, exerts personal jurisdiction over nonresidents to the extent allowed by due process. *Cox v. HP Inc.*, 368 Or. 477, 480–81 (2021) (en banc). Accordingly, "the jurisdictional analysis under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Moto Co.*, 374

F.3d 797, 800–01 (9th Cir. 2004). Personal jurisdiction is either general or specific. *Doe v. Deutsche Lufthansa*, 157 F.4th 1103, 1110 (9th Cir. 2025). "A court may exercise general jurisdiction only when a defendant is essentially at home in the State." *Id.* (cleaned up) (quoting *Impossible Foods*, 80 F.4th at 1086). Plaintiff does not assert that American is "essentially at home" in Oregon, so my focus is on whether the exercise of specific jurisdiction over American in Oregon comports with Oregon law and federal due process. *See* Resp., [ECF 19] at 3.

Unlike general jurisdiction, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (9th Cir. 2021). The Ninth Circuit uses a three-factor minimum contacts test to determine if a State has specific personal jurisdiction over a claim against a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (internal citations omitted). It is the plaintiff's burden to establish the test's first two factors. *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff fails to satisfy either of these [factors], then personal jurisdiction is not established in the forum state. If the plaintiff succeeds, the burden shifts to the defendant to present a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

It is a very close call, but I find that all three factors are satisfied here. Plaintiff has met her burden on the first two factors, and American has not made "a compelling case" that the exercise of jurisdiction in Oregon would not be reasonable. *Schwarzenegger*, 374 F.3d at 802.

**A. American Purposefully Availed itself of Oregon's Protections**

I find that Plaintiff satisfies her burden as to the first factor of the minimum contacts test because she shows that American purposefully availed itself of the privilege of doing business in Oregon. *See Doe*, 157 F.4th at 1111 (noting that the first factor is "an inquiry into the defendant's purposefulness' vis-à-vis the forum state"). This factor is satisfied where a defendant "has created 'continuing obligations' between himself and the residents of the forum," because the defendant "manifestly has availed himself of the privilege of conducting business" in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (citations omitted). A plaintiff can show this factor by establishing that the defendant has "perform[ed] some act which he purposefully avails himself of the privilege of conducting activities in the forum." *Schwarzenegger*, 374 F.3d at 802.

While conceding that "its contacts with Oregon are likely of such a nature that prong 1 is met," American disputes that its Oregon contacts were substantial, continuous, or systemic such that exercising jurisdiction in Oregon would be fair. Reply, [ECF 21] at 3; *see also* American's Supp. Br., [ECF 33] at 2–10 (asserting that American's claim-specific purposeful interjection into Oregon is nominal). The right question to determine whether the purposeful availment factor is not if the exercise of jurisdiction is "fair." Instead, I must inquire whether American acted with purpose towards Oregon and if so, the first factor is satisfied. *See Doe*, 157 F.4th at 1111; *see also Schwarzenegger*, 374 F.3d at 802 (noting that the rule for the first factor "uses the disjunctive").

Here, like in *Doe*, American contracted to carry Plaintiff into Oregon. "That contract requires performance in [Oregon], the forum state, and thus satisfies the purposeful availment

test." *Id.* Also, American has "'manifestly has availed [itself] of the privilege of conducting business' in Oregon" because American operates daily commercial flights in and out of Oregon, leases substantial gate space at PDX, has multiple employees, in Oregon, and has an agent for service of process in Oregon. *See id.*

Because Plaintiff has met her burden of showing that American purposefully availed itself of the privilege of conducting business in Oregon, the first factor of the minimum contacts test is satisfied here. *See Burger King*, 471 U.S. at 476.

**B. Plaintiff's Claim Arises Out of and Relates to American's Oregon Activities**

I find that Plaintiff satisfies the second prong because American's Oregon-related activities arise out of and relate to the claims in this lawsuit. The Ninth Circuit has concluded that "the 'arises out of' test requires the defendant's contacts with the forum to be a but-for cause of the plaintiff's claims." *Doe*, 157 F.4th at 1112. In *Doe*, the Ninth Circuit concluded that the airline's contract for carriage into California was a forum related activity and the alleged tort claims arose "out of the defendants' California activities because the contract for carriage into California is a but-for cause of the tort claims." *Id.*

Like in *Doe*, Plaintiff entered into a contract for carriage into Oregon with American that is a but-for cause of her negligence claim. Without the contract for carriage to Oregon from Missouri, Plaintiff would not have sat next to Knotts and "the tortious conduct would not have occurred." *Doe*, 157 F.4th at 1112. I am mindful of the distinctions between the defendants' forum activities in *Doe* and American's Oregon-related activities here. First, in *Doe*, the defendant airline engaged in the tortious conduct—violating Doe's and Roe's privacy. *Id.* at 1113. Second, in *Doe* the plaintiff's tort claims included "acts and omissions that happened on the flight into California and *while in California*." *Id.* (emphasis added). Here, in contrast, a third party—Knotts—initiated

the alleged tortious conduct, and Plaintiff does not allege that any of American's negligent acts or omissions happened either on her flight into Oregon or in Oregon. Instead, Plaintiff alleges conduct that happened in (or just above) Missouri and continued into Texas: American gate agents and flight attendants allowed Knotts to board the flight in Missouri, Knotts assaulted Plaintiff during take-off, and Dallas police investigated the incident when the plane landed in Texas.

Despite these distinctions, I am bound by Ninth Circuit precedent to find that Plaintiff has satisfied the second factor. The Ninth Circuit's decision in *Doe* holds that "[t]he 'arises out of' test requires the defendants contacts with the forum to be a but-for cause of the plaintiff's claims." *Doe*, 157 F.4th at 1112.[1] Here, without the contract for carriage into Oregon, Plaintiff would not have sat next to Knotts nor needed to interact with him at all after walking away from him at the Missouri airport bar, "and so the tortious conduct would not have occurred." *See id.* Accordingly, I find that Plaintiff has met her burden on the second factor.

**C. Fair Play and Substantial Justice**

I find that Plaintiff has met her burden of establishing that American purposefully directed its business activities toward Oregon and that her claims arise out of American's Oregon conduct—selling airline tickets, including specifically selling Plaintiff a ticket back to Oregon. The burden now shifts to American to "'present a compelling case' that the exercise of jurisdiction

[1] The Oregon Supreme Court has "rejected the simple 'but for' test, which requires only that the plaintiff's 'claim would not have arisen but for the defendant's forum activities" as "overinclusive." *Cox*, 368 Or. 477, 486 (2021) (en banc). Instead, it has concluded "that a case will 'arise out of or relate to' the defendant's connection with Oregon only if the defendant's Oregon activities 'provide a basis for an objective determination that the litigation was reasonably foreseeable.'" *Id.* at 494 (quoting *Robinson v. Harley-Davidson*, 354 Or. 572, 594 (2013)). Objectively, it is reasonably foreseeable that an airline operating flights in and out of Oregon might be sued for negligence when an Oregon resident who the airline contracted with to deliver her home to Oregon is injured by a third party on one of the airline's flights, during that customer's journey home to Oregon. *See id.*

would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–78). The Ninth Circuit has developed a seven-factor balancing test to determine the reasonableness of exercising personal jurisdiction:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Doe*, 157 F.4th at 1113 (quoting *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)). I find that these factors just miss adding up to a "compelling case" that jurisdiction in Oregon is unreasonable.

I find that the first factor, "purposeful injection," goes to Plaintiff in that it favors jurisdiction in Oregon. American concedes that it purposefully availed itself of the privilege of doing business in Oregon. [ECF 33] at 2 (acknowledging that its Oregon contacts are sufficient to satisfy the yes/no purposeful availment question). When a defendant purposefully avails itself of the privilege of doing business in the form, the purposeful injection factor is met. *See Silk v. Bond*, 65 F.4th 445, 458 (9th Cir. 2023) (holding that the "purposeful interjection" factor is met when the purposeful availment prong is met); *see also Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991) (because the panel "concluded . . . that appellees purposefully availed themselves of the privilege of conducting activities in California, there is no need to analyze this first factor separately").

I find that the burden on American, the second factor, is neutral. American asserts that my analysis of this factor must include the burden on witnesses and the limits of the Court's subpoena power, but I disagree. *See* [ECF 33] at 3–4. Based on the Ninth Circuit's treatment of this factor, American's suggested inquiry is too broad. Instead, for this factor, I focus only on American's

burden of litigating in Oregon. *See e.g.*, *Doe*, 157 F.4th at 1113 (considering the burdens of litigating in California specific only to the defendants). Although American is not an Oregon corporation nor headquartered in Oregon, the reality of modern litigation significantly reduces the burden of litigating outside one's "home" state. *See id.* Although American would prefer to litigate in Texas, it is no great burden to try this matter in Oregon. And American is, after all, an airline company. It is reasonable to assume that the burden of traveling to Oregon is lower for American than many other companies. Accordingly, this factor is a tie.

The third factor, extent of conflict with the sovereignty of the defendant's state, lines up for American. As American points out, Texas law differs materially from Oregon's regarding liability for unforeseeable third-party criminal acts, like the one at issue here. [ECF 33] at 4. American also argues that Oregon's only direct connections with this case are Plaintiff's residence and her itinerary's ultimate destination whereas Texas has a direct connection to the post-incident investigation. *Id.* Plaintiff concedes that this factor might fall for American but asserts that the importance of Texas's sovereignty or interests is minimal. [ECF 35] at 4–5. Still, I find that this one goes to American.

At first blush, the fourth factor, Oregon's interest in adjudicating the dispute, weighs against jurisdiction. The alleged assault occurred in Missouri and was investigated in Texas, presumably by Texas residents. Knotts, the perpetrator, resides in Texas. There is no indication that any of the witnesses—other passengers, airline employees, or law enforcement—have any ties to Oregon. Indeed, a compelling argument can be made that most of the witnesses have ties to Texas. Nevertheless, Oregon has a strong public interest in redressing the tort wrongs suffered by its residents. *See Roth*, 942 F.2d at 624 (assuming that in a tort actions, a forum states has a strong public interest in redressing its resident's wrongs). Here, the interest is reduced by Oregon's

tenuous connection to the tort, but still, I find that Oregon has a strong enough interest to chalk this one up in favor of jurisdiction.

Judicial efficiency, the fifth factor, cuts against jurisdiction. Efficiency turns on the location of witnesses and evidence. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001). It appears that all the relevant witnesses except Plaintiff are located outside of Oregon, and the Court lacks compulsory power over them. Modern technology reduces the significance of physical location (for example, allowing for remote depositions), but it does not eliminate the limits on subpoena power, trial-witness travel availability, and the practical costs associated with bringing witnesses to Oregon from either Texas or Missouri. Accordingly, this factor goes in American's tally.

The sixth factor, Plaintiff's convenience, must go to her. As American points out, however, this factor is not determinative.

The final factor, availability of an alternative forum, weighs against jurisdiction. Missouri and Texas are both alternative forums. The assault happened in Missouri, and the investigation happened in Texas, which is also Knotts's residence. It appears more likely that potential witnesses have ties to either one of those states—for example, it is more likely that a passenger who observed Knotts at the airport bar lives in Missouri than it is that she lives in Oregon or that the flight attendant who witnessed Plaintiff's assault on the Missouri to Texas flight is regularly in Missouri or Texas than it is that she is in Oregon. Plaintiff has not shown how a district court in Texas, American's principal place of business, is unavailable to litigate this dispute. *See Doe*, 157 F.4th at 1114. Accordingly, this factor goes to American.

Three factors (purposeful injection, Oregon's interest, and Plaintiff's convenience) weigh in favor of jurisdiction, three (conflict with Texas's sovereignty, efficient judicial resolution, and

availability of an alternative forum) weigh against, and one (burden on American) is neutral. The Ninth Circuit has held that an identical lineup "does not add up to a 'compelling case' against jurisdiction where . . . many of the factors that weigh against jurisdiction do only slightly." *Doe*, 157 F. 4th at 1114. Here, of the factors that weigh against jurisdiction, I find that one tips the scales more than slightly: efficient judicial resolution. As discussed above, Plaintiff, an Oregon resident, has a strong connection with Oregon, but otherwise, all the tortious conduct started and ended in other states.

Ultimately, however, the principles controlling the exercise of jurisdiction over an out-of-state party "derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.'" Ford Motor Co., 592 U.S. at 360 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). Given American's contacts with Oregon and the connection of those contacts to Plaintiff's negligence claim, I cannot find that American has made a compelling case that its due process rights would be violated by the exercise of personal jurisdiction despite the weak connection between Oregon and Plaintiff's lawsuit. *See Ford*, 592 U.S. at 367.

## II. American's Alternative Motion to Transfer to the Northern District of Texas

Because I find it appropriate to exercise personal jurisdiction over American, I can consider American's alternative Motion to transfer this action to the United States District Court for the Northern District of Texas.[2] [ECF 16]. A district court has the discretion to transfer a lawsuit to another district "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28

[2] American argues that I lack venue under 28 U.S.C § 1391(b)(1) because the defendants are not all residents of the same state and American is not subject to personal jurisdiction in Oregon. [ECF 16] at 9–10. Because I find that that American is subject to personal jurisdiction in Oregon, its venue argument fails.

U.S.C. § 1404(a). As the moving party, American bears the burden of showing that the Northen District of Texas is a "more appropriate forum." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). When considering a motion to transfer, I must engage in a two-part analysis. First, I consider "whether the transferee district was one in which the action might have been brought by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (internal quotation marks omitted). If so, I engage in "an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, (1988) (internal quotation marks omitted).

American argues that transfer is appropriate, despite the weight generally given to a plaintiff's forum choice, because Oregon's connection to the events of the lawsuit is limited and almost all of the relevant witnesses, "including law enforcement officers, airline personnel, and investigative records are located in or near Texas, where they will be most accessible." [ECF 16] at 11. Plaintiff argues that American has not presented a compelling case in favor of transfer. [ECF 19] at 14–15; [ECF 35] at 10. In Plaintiff's view, better access to witnesses and evidence in Texas is not a compelling reason to move this litigation. [ECF 19] at 14–15; [ECF 35] at 12–13. Plaintiff argues that American's arguments regarding witness availability are not convincing because American has not shown actual witness unavailability, which is the standard that other district courts in this Circuit and other federal courts have applied. [ECF 35] at 13–15. Plaintiff argues that the D.C. Circuit's standard is consistent with the Ninth Circuit's reasoning in *Doe* and urges me to apply it here. *Id.* at 14–15.

///

///

///

**A. Whether this Action Could Have Been Brought in Texas**

Plaintiff does not appear to dispute that she could have brought this action in Texas. *See generally* [ECF 19] at 13–15. I agree that venue would be proper in Texas as that is where Plaintiff's assault was investigated and where American has its principal place of business.

**B. Convenience and Fairness Analysis**

**1. Plaintiff's Choice of Forum**

Although generally, a plaintiff's forum choice is given substantial weight, less deference is given to a plaintiff's chosen forum where the forum lacks a strong connection to the lawsuit's allegations. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *see also Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.").

There is no dispute that Plaintiff has chosen her home form. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). American is correct, however, that none of the alleged facts occurred in Oregon. Instead, some happened in Missouri (Knotts became intoxicated, boarded the airplane, and assaulted Plaintiff) and some happened in Texas (law enforcement investigated the assault and charged Knotts). The only connection to Oregon is that Plaintiff was a resident of Oregon when the alleged conduct took place and based on the record, continues to reside in Oregon. Therefore, I find that Plaintiff's choice of forum should be given less weight. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157–58 (S.D. Cal. 2005) (collecting cases where "courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum").

///

**2. Parties' Convenience**

Transfer is not appropriate when it only serves to shift the burden of litigating in a distant forum from the plaintiff to the defendant. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)) ("At best, the defendants' motion to transfer venue would serve to 'merely shift rather than eliminate the inconvenience.'") (internal citation omitted)). Plaintiff asserts that "[t]his Oregon forum is very important" to her and transfer to Texas would result in "the imposition of great difficulty and inconvenience on a sexual assault victim." [ECF 19] at 14–15. I am sympathetic that requiring Plaintiff to travel to Texas to try this case would inconvenience her. That said, given that the central dispute in this lawsuit occurred primarily in Missouri and Texas, this is not an instance where transfer would only serve to shift the burden from plaintiff to defendant. Accordingly, while I give weight to the fact that transfer would burden Plaintiff, I cannot find under these circumstances that transfer would only shift the burden of litigating in a distant forum from American to Plaintiff.

**3. Witnesses' Convenience**

Witness convenience is generally recognized as "'the most important factor to be considered in ruling on a motion under § 1404(a).'" *Saleh*, 361 F. Supp. 2d at 1160 (quoting *State Street Capital Corp. v. Dente*, 855 F.Supp. 192, 197 (S.D.Tex.1994)). Here, American has identified material witnesses in Texas: Dallas, Texas law enforcement officers and the alleged perpetrator. [ECF 33] at 7. As Plaintiff points out, American has not provided any evidence that these witnesses would refuse to come to Oregon for trial, and other witnesses like the people at the airport bar who witnessed Knotts may be Missouri residents or may live elsewhere. [EFC 35] at 12, 15. Moreover, Plaintiff argues that she is the most important witnesses to this sexual assault, and she lives in Oregon. *Id.*at 15.

Given the circumstances here, I find that witness convenience strongly favors transfer to the Northern District of Texas. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1119 (9th Cir. 2007). American has identified important witnesses in that District—the investigating law enforcement officers and Knotts, the alleged assailant—that are material to this lawsuit and outside of Oregon's compulsory power. *See cf. Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335–36 (9th Cir. 1994) (district courts should "examine[ ] the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility and convenience to the forum). While Plaintiff is obviously an important witness, she will not need to be compelled to testify in her own lawsuit, and she has not identified any specific financial or mental health hardships that she would suffer if this action were transferred. Accordingly, I find that consideration of witness convenience favors transferring venue.

**4. Ease of Access to Evidence**

American argues that records and evidence related to the investigation of Plaintiff's assault are also located in Texas and that this factor favors transfer. Given how litigation works today, the location of evidence "is no longer weighed heavily." *Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). Accordingly, this factor is neutral.

**5. Miscellaneous Factors**

Familiarity with the applicable substantive governing law slightly favors transfer because Plaintiff's negligence claim certainly will not be decided under Oregon law as none of the relevant conduct happened in Oregon. *See Decker*, 805 F.2d at 843. "[T]he unfairness of burdening citizens in an unrelated forum with jury duty" is another public factor that slightly favors transfer. *See id.* While Plaintiff is at home here, this forum has virtually no connection to the conduct at issue, all of which occurred in Missouri or Texas. Because Knotts, the alleged assailant is a Texas resident,

I find it slightly more reasonable to burden Texas citizens with jury duty. To the extent that there is local interest in this lawsuit, I find that this consideration is neutral. While Oregon has an interest in providing redress for its residents, local interest in this lawsuit is minimized because the events giving rise to it occurred outside of this district. *Id.*

Having balanced all the factors, I find that American has satisfied its burden of showing that a transfer would promote the convenience of the witnesses and be in the interests of justice. I afford Plaintiff's chosen forum less weight because the alleged facts occurred in Missouri and Texas, and Plaintiff has not shown that she would have difficulty effectively litigating this case in the Northern District of Texas. I find that the convenience of material, non-party witnesses and the availability of compulsory process weigh heavily in favor of transfer. Other factors either only slightly tip the scales or are neutral.

**CONCLUSION**

As stated above, I deny American's Motion [ECF 16] in part and grant it in part. I deny American's Motion to Dismiss, and I grant its alternative Motion to Transfer Venue. The Clerk of the Court is directed to transfer this matter to the United States District Court for the Northern District of Texas.

IT IS SO ORDERED.

DATED this 30th day of October, 2026.

Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge